IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SHIRLEY J. COOPER,

    Plaintiff,

v.

JO ANNE B. BARNHART,
Commissioner of Social Security
Administration,

    Defendant.

No. C 05-3463 JSW

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT, AND REMANDING CASE**

Plaintiff Shirley J. Cooper brings this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the "Commissioner"). This matter is now before the Court on Plaintiff's motion for summary judgment and the Commissioner's cross-motion for summary judgment. Pursuant to Civil Local Rule 16-5, the motions have been submitted on the papers without oral argument. Having carefully reviewed the administrative record and considered the parties' papers and the relevant legal authority, the Court hereby GRANTS Plaintiff's motion for summary judgment, DENIES the Commissioner's cross-motion for summary judgment, and REMANDS the matter to the Commission for additional proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g).

**BACKGROUND**

Cooper brings this action pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3) to obtain judicial

1

1  review of a final decision of the Commissioner denying her request for Social Security benefits from
2  August 28, 2001, Plaintiff's alleged onset date, until January 16, 2004, the date from which the
3  Commissioner approved benefits.  Cooper was fifty-five years old on August 28, 2001, her alleged
4  disability onset date. (Administrative Record "AR" at 43-44.)  Cooper graduated from high school
5  and has worked as a transit operator, an interviewer/survey worker, a shoe store shelf straightener,
6  and a rental car driver.  (*Id*. at 44, 99.)  Cooper has not engaged in gainful employment since August
7  28, 2001.  (*Id.* at 98.)  Cooper's alleged disabling medical conditions are arthritis in her back and
8  knees, groin pain, bilateral inguinal hernias, high blood pressure, pain in her right shoulder, and
9  depression.  (*Id.* at 30, 44, 98, 409-13.)

10  Cooper applied for Social Security Disability and Supplemental Security Income on March
11  7, 2002, when she was fifty-five years old. (Id. at 29.)  Cooper's initial and reconsideration
12  applications were denied.  (*Id.* at 43.)  A hearing was first conducted before an administrative law
13  judge ("ALJ") on September 29, 2003.  (*Id.*)  Cooper and vocational expert John Velton testified.
14  (*Id.*)  In his decision dated November 21, 2003, the ALJ found that Cooper was not disabled.  (*Id.* at
15  48.)  Also, the ALJ found that Cooper's allegations regarding pain and other symptoms lacked
16  credibility.  (*Id.*)  The ALJ found that Cooper had "medically determinable impairments
17  significantly limit[ing] her ability to perform basic work activities," but found that Cooper retained
18  the residual functional capacity to perform light work, and that none of her impairments or
19  combinations of impairments precluded her from her past relevant work as a survey worker or a
20  driver.  (*Id.*)  Cooper requested a review of the ALJ's decision on January 22, 2004.  (*Id.* at 65-69.)
21  The Appeals Council's order dated June 22, 2004, vacated the decision and remanded the case to the
22  ALJ for further proceedings with instructions.  (*Id.* at 84-86.)

23  On December 7, 2004, a second hearing took place before the same ALJ.  (*Id.* at 30.)  Cooper
24  and John Becchetti, M.D., a medical advisor, testified during the hearing.  (*Id.*)  The ALJ issued a
25  partially favorable decision on February 24, 2005.  (*Id.* at 29-37.)  In his decision, the ALJ found
26  that Cooper was disabled since January 16, 2004, but not before that date.  (*Id.*)  The Appeals
27  Council denied Cooper's requests to review and reopen the ALJ's second decision.  (*Id.* at 4-16.)
28

2

Having exhausted her administrative remedies, Cooper commenced this action for judicial review of the ALJ's second decision. Cooper argues that the ALJ's conclusions were not made by application of proper legal standards or supported by substantial evidence. On June 14, 2006, Cooper brought the instant motion for summary judgment. On July 12, 2006, the Commissioner filed a cross-motion for summary judgment. The Commissioner argues that the ALJ's determinations are supported by substantial evidence and free of legal error.

## ANALYSIS

**A.      Standard of Review of Commissioner's Decision to Deny Social Security Benefits.**

A federal district court may not disturb the final decision of the Commissioner unless it is based on legal error or the factual findings are not supported by substantial evidence. 42 U.S.C. § 405(g); *Sprague v. Bowen*, 812 F.2d 1226, 1229 (9th Cir. 1987). Considering the administrative record as a whole, "[s]ubstantial evidence means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). To determine whether substantial evidence exists, courts must look at the record as a whole, considering both evidence that supports and undermines the ALJ's findings. *Desrosiers v. Sec'y of Health and Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). An ALJ's decision must be upheld, however, if the evidence is susceptible to more than one rational interpretation. *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984).

**B.      Legal Standard for Establishing a Prima Facie Case for Disability.**

The plaintiff has the burden of establishing a prima facie case for disability. *Id.* at 1452. The disability assessment by the Commissioner follows a five-step sequential evaluation to determine whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920. First, the claimant must not be working. 20 C.F.R. § 416.920(b). Second, the claimant's impairment must be "severe." 20 C.F.R. § 416.920(c). Third, when the claimant has an impairment that meets the duration required and is listed in Appendix 1 (a list of impairments presumed severe enough to preclude work located in subpart P of part 404 of 20 C.F.R. § 416.920), or is equal to a

listed impairment, benefits are awarded without considering the claimant's age, education, and work experience. 20 C.F.R. § 416.920(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner assesses the claimant's residual functional capacity to determine if the claimant can perform past work. 20 C.F.R. § 416.920(e). If the claimant can perform prior work, then benefits are denied. *Id.* Fifth, if the claimant cannot perform prior work because of the impairment then the claimant's age, education, work experience, and residual functional capacity are considered to see if the claimant is capable of performing other work that exists in the national economy. 20 C.F.R. § 416.920(g). The claimant is not entitled to benefits if the claimant can adjust to other work. *Id.*

In step one here, the ALJ found that Cooper was not working. (AR at 30.) In the second step, the ALJ found that Cooper's degenerative joint disease in her hips, back and knees, and a right inguinal hernia and right supraspinatus tendon tear constituted "severe" impairments; however, the ALJ found her impairments did not meet or medically equal the listed disabling conditions. (*Id.* at 30-31.) In the fourth step, the ALJ found that prior to January 16, 2004, Cooper had the residual functional capacity to perform light work and was capable of performing her past work, specifically, as an interviewer/survey worker or a driver. (*Id.* at 31, 34.) And finally, the ALJ found that Cooper was disabled since January 16, 2004. (*Id.* at 35.)

Cooper argues that the ALJ's finding that Cooper was not disabled before January 16, 2004 should be reversed because the ALJ applied incorrect legal standards and the decision was not supported by substantial evidence. Specifically, Cooper contends that the ALJ: (1) improperly discredited the opinions of a treating physicians; (2) failed to make proper findings to discredit Cooper's pain testimony; (3) improperly determined Cooper's residual functional capacity; and (4) failed properly to determine the onset date of Cooper's disability. The Court will address each argument in turn.

**C.     The ALJ Improperly Discredited the Treating Physician's Opinions.**

Cooper contends that the ALJ committed error by improperly discrediting the opinions of her treating physicians and improperly evaluating the medical evidence. The Commissioner argues that

4

1  the ALJ properly rejected the opinions of Cooper's treating physicians.

2  In general, the opinion of a treating physician is afforded greater weight than one from a non-
3  treating physician. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). However, the ALJ
4  may disregard the treating physician's opinion if the ALJ "'make[s] findings setting forth specific,
5  legitimate reasons for doing so that are based on substantial evidence in the record.'" *Id.* (quoting
6  *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987)). The ALJ can meet this burden "by setting out
7  a detailed and thorough summary of the facts and conflicting clinical evidence, stating his
8  interpretation thereof, and making findings." *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986).

9  Here, the ALJ explained that he typically gives the opinions of treating physicians "great
10  weight." (AR at 33.) However, he rejected a September 2003 opinion by Dr. Lai, one of Cooper's
11  treating physicians, in which Dr. Lai found that Cooper could:

> stand no more than 15 minutes at a time up to two hours per day, could sit less than [3] minutes at a time, could lift less than [5] pounds frequently and less than 10 pounds occasionally, she could do no bending, stooping or crouching due to her groin pain and degenerative joint disease of the left knee and cervical and lumbar spines. (*Id.*)

15  To support this determination the ALJ stated:

> I . . . find that opinion not well-supported by medically acceptable clinical and laboratory diagnostic techniques and also inconsistent with other substantial evidence in the record. See, Social Security Ruling 96-2p. Notably, Dr. Lai's own report lacks any significant objective findings. In addition, Dr. Lai himself noted that there was no evidence of significant degenerative joint disease and that the claimant's groin pain was of unknown etiology. (*Id.*)

An ALJ may reject a treating physician's conclusions when they are not supported by
objective findings. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). An ALJ may also
reject a treating physician's opinion that is "brief and conclusory in form with little in the way of
clinical findings to support its conclusion." *Young v. Heckler*, 803 F.2d 963, 968 (9th Cir. 1986).
However, the ALJ "must do more than offer his conclusions. He must set forth his own
interpretations and explain why they, rather than the doctors', are correct." *Reddick v. Chater*, 157
F.3d 715, 725 (9th Cir. 1998) (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). The
ALJ failed to do so in this case.

5

1    Here, the ALJ's opinion reviewed some of the medical evidence, but did not link the
2 evidence to his conclusion that Dr. Lai's findings were not supported by "significant objective
3 findings" or "well-supported by medically acceptable clinical and laboratory diagnostic techniques."
4 (AR at 33.)  Thus, the ALJ did not give sufficiently specific reasons for rejecting Dr. Lai's
5 conclusions.  *See, e.g.*, *Embrey*, 849 F.2d at 421-22 ("To say that medical opinions are not supported
6 by sufficient objective findings or are contrary to the preponderant conclusions mandated by the
7 objective findings does not achieve the level of specificity [the Ninth Circuit requires], even when
8 the objective factors are listed seriatim.").  Furthermore, the ALJ did not explain why he disagreed
9 with Dr. Lai's opinions about Cooper's abilities to stand, sit, lift, bend, stoop, and crouch.  He did
10 not set forth his interpretation of the objective evidence or explain why his interpretation, rather than
11 the doctor's, was correct.  Rather, the ALJ merely determined that the medical evidence of record is
12 consistent with his finding that Cooper was able to perform light work through January 15, 2004.
13 (AR at 33.)  "This approach is inadequate."  *See Embrey*, 849 F.2d at 422 (finding that an ALJ
14 commits error where he fails to give specific reasons for rejecting a treating physician's conclusions
15 and "merely states that objective factors point toward an adverse conclusion and makes no effort to
16 relate any of [the] objective factors to any of the specific medical opinions and findings he rejects.").
17    Thus, the ALJ committed legal error when he discredited the opinion of Cooper's treating
18 physician but failed to set forth "a detailed and thorough summary of the facts and conflicting
19 clinical evidence, stating his interpretation thereof, and making findings."  *Cotton*, 799 F.2d at 1408.

**D.    The ALJ's Assessment of Plaintiff's Credibility Was Improper.**

21    Cooper argues that the ALJ applied an incorrect legal standard when he discredited Cooper's
22 pain testimony but failed to "state supportable reasons, grounded in evidence, for discrediting Ms.
23 Cooper's statements."  (Motion at 12.)  The Commissioner contends that the ALJ's assessment of
24 Cooper's credibility was proper because he "advanced several clear and convincing reasons,
25 supported by substantial evidence, supporting his credibility assessment."  (Cross-Motion at 7.)
26    "In deciding whether to accept a claimant's subjective symptom testimony, an ALJ must
27 perform two stages of analysis."  *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996).  The ALJ

28

must first determine whether the claimant has properly produced objective medical evidence of an underlying impairment that could reasonably produce the alleged pain or symptoms. *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc) (reaffirming *Cotton*, 799 F.2d at 1407). Once the claimant meets this requirement, and unless the ALJ makes a finding of malingering based on affirmative evidence thereof, "the ALJ may reject the claimant's testimony regarding the severity of her symptoms only if he makes specific findings stating clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1283-84 (9th Cir. 1996) (citing *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1994)). In addition, the ALJ "must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." *Smolen*, 80 F.3d at 1284. This serves to provide the reviewing court with assurance that the ALJ did not arbitrarily dismiss the claimant's testimony regarding pain. *Bunnell*, 947 F.2d at 345-46. ALJs are permitted to consider numerous factors in determining whether a claimant's subjective statements are credible. *See id.* at 346-47; *see also* 20 C.F.R. § 404.1529.

Here, the ALJ first found that Cooper had some impairments prior to January 16, 2004, but went on to discredit her statements regarding pain and other symptoms with respect to that time period. (AR at 33.) The ALJ offered several reasons in support of this finding. First, the ALJ noted that a reported after medical examination undertaken due to her complaints failed to produce significant findings to corroborate Cooper's complaints. (*Id.*) Second, the ALJ stated that Cooper's behavior regarding treatment and assessment undermined her credibility. (*Id.* at 33-34.) Finally, the ALJ asserted that his own observations of Cooper during the two hearings before him diminished her credibility. (*Id.* at 34.)

However, the ALJ's rationale is insufficient because it fails to specify which specific parts of Cooper's testimony he discredited. The Ninth Circuit has made clear that "[g]eneral findings are insufficient; rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Reddick*, 157 F.3d at 722 (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). Therefore, the ALJ did not apply the correct legal standard to discredit Cooper's pain testimony and the Court is unable to find that the opinion by the ALJ did not

7

1 arbitrarily disregard Cooper's testimony regarding her pain.  *See Bunnell*, 947 F.2d at 345-46.

**E.    The ALJ Improperly Determined Plaintiff's Residual Functional Capacity.**

Cooper asserts that the residual functional capacity ("RFC") determination was legally flawed and led to an erroneous determination that Cooper had the capacity to perform light work prior to January 16, 2004.  Specifically, Cooper contends that the ALJ failed to: (1) perform a function-by-function analysis of her functional limitations and restrictions before expressing her RFC in terms of an exertion level; (2) consider that Cooper used a medically-prescribed cane to ambulate; (3) consider the vocational expert's testimony during the first hearing; and (4) consider the combined effects of Cooper's impairments.  (Motion at 14-16.)

An ALJ must first determine whether the claimant's impairments meet or equal a listed impairment.  *See* 20 C.F.R. § 416.920(d) (step three of the disability analysis).  If the claimant's impairments do not meet or equal a listed impairment, then the ALJ must assess the claimant's RFC.  *See id.* § 416.920(e) (step four of the disability analysis).  The RFC is "the most [the claimant] can still do despite [her] limitations."  *Id.* § 416.945(a)(1).  To make an RFC assessment, the ALJ must first perform a "function-by-function" analysis of the claimant's impairments compared with the functions required for work-related activities.  SSR 96-8p.  The ALJ must consider the claimant's impairments including the impact of any related symptoms.  *Id.*  And, the ALJ must engage in the function-by-function analysis before categorizing the claimant's abilities in terms of exertional levels (*e.g.*, light or heavy work).  *Id.*  The RFC is then used to determine if the claimant is able to perform past relevant work.  *See* 20 C.F.R. § 416.920(e).  The burden of proof is on the claimant at this step, but the ALJ must make the requisite factual findings to support his conclusion.  *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001); *see also* SSR 82-62.

Here, the ALJ found that Cooper's impairments did not meet or equal a listed impairment but that her impairments significantly limited her ability to perform basic work activities.  (AR at 36.)  The ALJ's opinion cites extensive evidence of Cooper's conditions and their severity prior to January 16, 2004, but then concludes that Cooper was able to perform light work such as "her past work as an interviewer/survey worker . . . and as a driver . . . ."  (*Id.* at 34.)  The ALJ's analysis is

8

insufficient. First, the opinion does not address Cooper's functional limitations resulting from her impairments prior to January 16, 2004. Second, it does not engage in a function-by-function analysis to determine exactly what functions Cooper is able to perform in light of her impairments. And finally, the opinion expresses Cooper's RFC in terms of the exertional work level ("light work") without first engaging in a function-by-function analysis. (AR at 34.)

The Commissioner argues that the ALJ was not required to perform a function-by-function analysis in light of *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). (Cross-Motion at 8-9.) However, *Bayliss* held that an ALJ is not required to prepare "a function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record." *Bayliss*, 427 F.3d at 1217 (citing SSR 96-8p). Here, the ALJ found that Cooper had severe and non-severe impairments that were credible and supported by the record, but he failed to perform *any* function-by-function analysis. Therefore, the ALJ applied an incorrect legal standard when he determined Cooper's RFC without performing the required function-by-function analysis.

In addition, the ALJ's determination that Cooper had the capacity to perform past work was further flawed because it did not contain factual findings to support the conclusions. To conclude that Cooper had the capacity to perform a past relevant job, the ALJ was required to make specific factual findings addressing the physical and mental demands of the past job and whether Cooper was able to fulfill those demands in light of her RFC. *See Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001); *see also* SSR 82-62. The ALJ must consider both severe and non-severe impairments because even those impairments that are not severe may be outcome determinative when considered together with limitations resulting from other impairments. *Pinto*, 249 F.3d at 844; SSR 82-62; SSR 96-8p. Here, the ALJ failed to address the physical and mental demands of Cooper's past work or whether Cooper's RFC prior to January 16, 2004 would allow her to perform those functions. In particular, the opinion does not address whether Cooper was able to sit for extended periods of time or alternate sitting and standing frequently, functions relevant to her ability to perform her past work. Moreover, the ALJ did not consider Cooper's non-severe impairments in his analysis, Cooper's reliance on a cane to ambulate, or the occupational expert's testimony from the 2003

9

1  hearing. Therefore, the ALJ also failed to apply the correct legal standard to determine whether
2  Cooper was able to perform her past work prior to January 16, 2004.

3  In sum, the ALJ applied the incorrect legal standard to determine Cooper's RFC and also to
4  determine whether Cooper was able to perform her past work in light of her RFC.

**F.     The ALJ Failed to Determine Properly the Onset Date of Plaintiff's Disability.**

Cooper next argues that the ALJ's determination that she was able to perform a full range of light work until January 16, 2004 was erroneous. Specifically, Cooper contends that her disability onset date should not have been inferred by the ALJ, but rather that the ALJ should have developed a record to determine the onset of her disability. (Motion at 17.) In response, the Commissioner argues that, due to the progressive nature of Cooper's conditions, the exact date she became disabled had to be inferred from the evidence, and there were reasonable grounds to support the ALJ's determination. (Cross-Motion at 9-10.)

Factors that a court should consider when determining a claimant's disability onset date include: (1) the claimant's statements as to when the disability began, (2) the day the individual stopped working, and (3) the medical evidence. SSR 83-20. The Court may infer that the onset date "of a disabling impairment[] occurred some time prior to the date of the first recorded medical examination" if the evidence supports such a conclusion. *Id.; see also Armstrong v. Comm'r*, 160 F.3d 587, 590 (9th Cir. 1998) (a claimant's diagnosis date may not be conclusive evidence that the impairment was not disabling long before that date). However, where a claimant has "slowly progressive impairments, it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling." SSR 83-20. When there is no precise evidence available as to when an impairment became disabling, the ALJ must call on the services of a medical advisor. *Delhomme v. Sullivan*, 924 F.2d 841, 848 (9th Cir. 1991); *see* SSR 83-20.

Here, Cooper alleges that she has been disabled since August 28, 2001 and has not worked since that date. (AR at 29, 98.) However, the medical evidence is not precise as to when Cooper became disabled. First, Cooper has sought treatment for pain in her right groin area since at least April 2001. (*Id.* at 182-83.) In September of 2001 Cooper was prescribed a cane for ambulation due

10

to her painful limping gait. (*Id.* at 173.) In 2002, an x-ray of Cooper's cervical spine indicated that she suffered from degenerative disc disease. (*Id.* at 240.) A subsequent x-ray of Cooper's knees also indicated "degenerative joint disease of the medical compartment on the left and also of bilateral patellofemoral compartments." (*Id.* at 226.) Cooper continued to see Dr. Lai in 2003, whose records indicate that Cooper continued to suffer from multiple areas of pain and continued to ambulate with a cane. (*Id.* at 294, 309.) A 2003 bilateral hip MRI indicated degenerative changes of Cooper's right hip joint; however, the MRI did not provide definite evidence of avascular necrosis. (*Id.* at 310.) In December of 2003, Cooper reported increasing hip pain to Dr. Lai and was not able to get on the examination table during the examination. (*Id.* at 225.) It was then that Cooper was referred to an orthopedist. The orthopedist reported that as of January 16, 2004 (the date of the appointment) Cooper reported hip and groin pain for several years that had gotten progressively worse. (*Id.* at 317.) In February 2004, an ultrasound of Cooper's groin area indicated that she had a small right indirect hernia. (*Id.* at 316.) An MRI of Cooper's shoulder in March 2004 indicated an "incomplete articular side supraspinatus tendon tear" and "joint effusion." (*Id.* at 314.) In March 2004, the orthopedist ordered a bilateral hip x-ray study of Cooper in the "frog lateral position." (*Id.* at 313.) This study concluded that Cooper suffered from "[p]rogressive degenerative joint disease bilaterally, now advanced on the right and moderately advanced on the left." (*Id.*) The doctor then suggested that Cooper may need a total hip arthroplasty, if physical therapy failed. (*Id.* at 312.) However, there is also medical evidence that indicates that Cooper may not have been disabled prior to January 16, 2004, including x-rays and ultrasounds rendering inconclusive results and physician opinions during that time that indicate contrary results. (*See id.* at 31-32.) Indeed, even the ALJ indicated that the record was ambiguous. (AR at 31) ( "According to the claimant's medical records, on complaints of groin and/or hip pain, the medical evidence, at least prior to 2004, was somewhat equivocal.").

In sum, the evidence is not conclusive with regard to when Cooper became disabled. Although some of Cooper's impairments were not diagnosed until 2004, Cooper's impairments may have become disabling prior to January 16, 2004. In light of the equivocal evidence, the ALJ was

11

required to call a medical expert to aid in determining the onset date. *See Delhomme*, 924 F.2d at 848; SSR 83-20. Instead, the ALJ inferred Cooper's disability onset date in light of the progressive nature of Cooper's impairments and the inconclusive evidence. (AR at 35.)

In response, the Commissioner argues that Dr. Becchitti's testimony assisted the ALJ in making the reasonable inference that Cooper's impairments became disabling on January 16, 2004 even though Dr. Becchetti did not specifically discuss Cooper's onset date. (Cross-Motion at 9-10.) However, Dr. Becchetti was called by the ALJ to assist in determining the status of Cooper's hernia and not the onset date of her disability. (AR at 415.) As such, the ALJ committed legal error because he failed to call a medical expert to assist him in a determination of Cooper's disability onset date.

**G.     Remand Standard.**

The decision to remand is within the discretion of the district court. *Harman v. Apfel*, 211 F.3d 1172, 1175-77 (9th Cir. 2000). If additional proceedings can remedy defects in the original administrative proceedings or will allow the Commissioner properly to complete the administrative proceedings, then the case should be remanded. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1980). Here, remand is appropriate because additional proceedings can remedy the ALJ's legal errors. Moreover, in light of Cooper's age and the delays in this case, additional proceedings should be held within 90 days. *See Hammock v. Bowen*, 879 F.2d 498, 504 (9th Cir. 1989).

## CONCLUSION

For the foregoing reasons, the Court GRANTS Cooper's motion for summary judgment and DENIES the Commissioner's cross-motion for summary judgment. The Court REMANDS the matter to the Commission for further proceedings consistent with this order.

**IT IS SO ORDERED.**

Dated: March 1, 2007

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE